1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

9   Carlos Villalobos Organista,

10                              Petitioner,

11   v.

12   Jeff B. Sessions, et al.,

13                              Respondents.

No.  CV-17-04719-PHX-GMS (MHB)

**ORDER**

14

15          Before the Court is Petitioner Carlos Villalobos Organista's Motion for

16   Preliminary Injunction (Doc. 3).  The Court heard oral argument on the motion on

17   December 28, 2017.  After consideration of the parties' briefs and their argument, the

18   Court grants the Motion.  The underlying Petition for Writ of Habeas Corpus will remain

19   pending before the Magistrate Judge for further proceedings and the parties will be

20   required to file a joint status report in 15 days.

21   **I.      Background**

22          Petitioner is a native and citizen of Mexico.  On July 5, 2016, Petitioner entered

23   the United States at the Nogales, Arizona port of entry as a nonimmigrant visa holder.

24   Petitioner's authorized period of stay expired on January 4, 2017.  On April 4, 2017,

25   Petitioner was taken into the custody of the United States Immigration and Customs

26   Enforcement  (Doc. 1 at 6).  Petitioner has applied for asylum, withholding of removal,

27   and protection under the Convention Against Torture.  (*Id*. at 3.)

28          On November 22, 2017, Petitioner was afforded a custody redetermination hearing

before an Immigration Judge (IJ).  The IJ granted Petitioner release upon payment of a bond of $20,000.  (*Id*. at 6.)  Petitioner's family attempted to post bond but was prevented from doing so because the Department of Homeland Security (DHS) invoked the automatic stay provision of 8 C.F.R. § 1003.19(i)(2), which allows the government to stay an IJ's order of release on bond where DHS initially determined the alien should not be released and where the IJ later ordered a bond of $10,000 or more.  (*Id*.)  The Government also filed a Notice of Appeal with the Board of Immigration Appeals (BIA), but a briefing schedule has not yet issued.  (*Id*. at 7.)  Petitioner believes the appeal will likely be pending for several months.

## II.    Motion for Preliminary Injunction

### A.    Standard

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948, pp. 129-130 (2d ed. 1995)).  To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The Ninth Circuit's "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*. *Alliance for the Wild Rockies v. Cottrell* 632 F. 3d 1127, 1134 (9th Cir. 2011).  Under that test, a preliminary injunction is appropriate when a plaintiff demonstrates that "'serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor.'"  *Id.* at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).  The movant must also satisfy the other two

*Winter* factors—likelihood of irreparable harm and that an injunction is in the public interest. *Id.* With respect to the irreparable harm prong, *Winter* specifically rejected the Ninth Circuit's "possibility of irreparable injury" standard. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Under *Winter*, a party seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The Court explained that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

**B.    Likelihood of Success on the Merits[1]**

The background of Petitioner's detention is not in dispute. The government has detained Petitioner for the past 8 months under 8 U.S.C. § 1226(a). His detention thus has been prolonged as that term is defined by the precedents in this Circuit and in the United States Supreme Court. In November 2017, Petitioner sought and received a custody redetermination hearing before an IJ pursuant to *Rodriguez v. Robbins* (*Rodriguez III*), 804 F.3d 1060, 1087 (9th Cir. 2015), which requires that after an individual has been detained under 8 U.S.C. § 1226(a) for more than six months, the government must produce "clear and convincing evidence that the non-citizen is a flight risk or a danger to the community." *Id.* Further, after a detention has become prolonged, continuing detention determinations must be made by a neutral decisionmaker.

> When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the rise of an erroneous deprivation of liberty in the absence of a hearing before

---

[1] The government points out that this Court confronted this issue in *Altayar v. Lynch*, 2016 WL 7383340 (D. Ariz. Nov. 23, 2016). But the Government places far too much emphasis on the decision, where the petitioner was detained pursuant to § 1226(c) as opposed to § 1226(a), and petitioner's due process claim was moot when the Report and Recommendation was issued, thereby rendering the discussion moot. Further, the absence of objections extinguished the Court's obligation to review the Report and Recommendation *de novo*. Thus, the Court is writing on a clean slate here.

- 3 -

a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at this stage of the proceedings is therefore a reasonable one."

*Rodriguez III,* 804 F.3d at 1069 (quoting *Diouf v. Napolitano (Diof II)*, 634 F.3d 1081, 1091-92 (9th Cir. 2011).

 At Petitioner's hearing, the IJ heard the evidence, and set bond at $20,000. The government then immediately invoked the automatic stay provision of § 1003.19(i)(2), which allows the government to stay an IJ's order of release on bond where DHS initially determined the alien should not be released and where the IJ later ordered a bond of $10,000 or more.

Because the background is clear, the question presented in this case is straightforward: does § 1003.19(i)(2) violate Petitioner's due process rights. Respondents' argument in opposition rests exclusively on the fact that because release on bond is a purely discretionary exercise, the automatic stay cannot violate the due process clause. But this argument ignores *Rodriguez III's* requirement that after six months of detention, the individual is entitled to an individualized bond hearing before an IJ with continuing detention decisions to be made by a neutral decisionmaker. *See Rodriguez III*, 804 F.3d 1060, 1087 (citing *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127, 1135 (2013)). Accepting the government's argument would nullify *Rodriguez III*'s holding and authorize detention in the absence of an individualized determination by an IJ of an individual's danger or flight risk. This cannot be, particularly in this case where a neutral decision maker has made a finding that Petitioner, a non-criminal alien, is entitled to release on bond and his family stands ready to post it.

Further undermining the Government's argument is the mechanism by which it invokes § 1003.19(i)(2). This process requires nothing more than a perfunctory and generic statement made by the INS in lieu of a neutral decisionmaker that an automatic stay is justified, devoid of a factual basis or evidentiary support. The explanation for the automatic stay provision is illuminating:

This change will allow the Service to maintain the status quo while it seeks review by the Board, and thereby avoid the necessity for a case-by-case determination of whether a stay should be granted in particular cases in which the Service has previously determined that the alien should be kept in detention and no conditions of release would be appropriate.  This stay is a limited measure and limited in time—it only applies where the Service determines that it is necessary to invoke the special stay procedure pending appeal, and the stay only remains in place until the Board has had the opportunity to consider the matter.

66 FR at 54910.

This rationale is precisely what *Rodriguez III* prohibits.  And as the government points out, this Court cannot review the merits of the IJ's bond decision.  8 U.S.C. § 1226(e).

The government maintains that the Attorney General is empowered to "establish whatever regulations, instructions, and other directives 'he deems necessary' to enforce the INA."  (Doc. 11 at 14) (quoting 8 U.S.C. § 1103).  But, again, this is past the six-month threshold established in *Rodriguez III*.  Accepting the government's argument would allow § 1003.19(i)(2) to render *Rodriguez* meaningless and has the practical effect of transforming 6 months of detention into 9 months of detention.  In this case, Petitioner received a hearing, where the IJ set bond at $20,000 and, thereafter, a non-neutral decision maker subverted the process.  The Court therefore finds that § 1003.19(i)(2), as implemented here, violates Petitioner's procedural due process rights.

This is bolstered by the availability of the procedure found in § 1003.19(i)(1) by which the service may seek a discretionary stay from the BIA of the IJ's bond determination.  And while the government contends that invocation of § 1003.19(i)(1) would, if granted, have the same practical effect as an automatic stay under § 1003.19(i)(2), the fact that the stay would be authorized by a neutral decision maker as opposed to the custodian itself would better satisfy the due process requirements of *Rodriguez III*.

///

### C.      Likelihood of Irreparable Injury

Because Petitioner has now been detained for over eight months and has already received a bond hearing that granted relief, he has established at least "'serious questions going to the merits . . . and the balance of hardships tips sharply in the plaintiff's favor,'" if not an outright likelihood of irreparable injury.

### D.      Balance of Hardships and the Public Interest

Petitioner argues that the balance of hardship tips in his favor because his continued detention is unlawful. And, as discussed above, the government has the ability to see an emergency discretionary stay under § 1003.19(i)(1), which the Court finds is a minimal burden to ensure that a neutral decision maker is making the detention determination. The Court finds that the balance of hardships and the public interest favor the granting of a preliminary injunction.

## III.    Conclusion

The Court finds that Petitioner is likely to succeed on the merits concerning his right to release pursuant to the individualized bond hearing he received, that he is likely to suffer irreparable harm in the absence of a preliminary injunction, that the balance of hardships tips in his favor, and that vindication of the right to a bond hearing is in the public interest. Accordingly, Petitioner's Motion for Preliminary Injunction (Doc. 3) is granted.

**IT IS ORDERED** withdrawing the reference to the Magistrate Judge and **granting** Petitioner's Motion for Preliminary Injunction (Doc. 3). Within 5 days, Petitioner must be permitted to post bond and be released in accordance with IJ Phelps's decision and order dated November 22, 2017.

///

///

///

///

///

1    **IT IS FURTHER ORDERED** that within 15 days, the parties must provide a

2    joint status report to the Court indicating what remaining proceedings are necessary.

3        Dated this 28th day of December, 2017.

4

5

6    G. Murray Snow

     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28